**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **1. SHONNA GORE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**1. THE STATE OF OKLAHOMA ex rel., OKLAHOMA HORSE RACING COMMISSION,**<br><br>**Defendant.** | ) | **Case No. ______________**<br><br>***Jury Trial Demanded***<br><br>***Attorney Lien Claimed*** |

## COMPLAINT

**COMES NOW** Shonna Gore, Plaintiff in the above-entitled action, by and through her attorneys, David R. Keesling and Timothy S. Kittle, of the law firm, SOLOMON | ARIEH, and for her causes of action alleges as follows:

### JURISDICTION /VENUE /PARTIES

1. Jurisdiction in this matter is based upon the existence of a federal question under 28 U.S.C. § 1331, pursuant to claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., as well as 28 U.S.C. § 1343(a)(4), which provides that "[t]he district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person . . . [t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights."

2. Venue is appropriate in the Western District of Oklahoma as Defendant maintains its main administrative office 2800 North Lincoln Boulevard, Suite 100, Oklahoma City.

3. Plaintiff SHONNA GORE was and is a resident of Canadian County, Oklahoma.

4. Defendant OKLAHOMA HORSE RACING COMMISSION ("OHRC") is an agency of the government of the State of Oklahoma.

5. Defendant OHRC, at all times relevant to the claims alleged herein, upon information and belief, was and is an employer affecting commerce which employed fifteen or more employees for each working day during the time period in which Plaintiff was employed by Defendant. *See* 42 U.S.C. § 2000e(b).

6. Due to the foregoing, this Court has jurisdiction over the parties and subject matter.

**JURISDICTION /VENUE /PARTIES**

7. Plaintiff Shonna Gore incorporates paragraphs 1 through 6 herein as if fully set forth verbatim.

8. At all times relevant to the claims alleged herein, Plaintiff was an employee covered by Title VII. *See* 42 U.S.C. § 2000e(f).

9. At all times relevant to her claims and allegations herein, Plaintiff was a member of a protected class under law, female.

10. At all times relevant to her claims and allegations herein, Plaintiff was a qualified individual with a disability, in that Plaintiff is afflicted with Type 1 insulin-dependent diabetes, of which Defendant was aware.

11. Plaintiff has utilized FMLA while employed by Defendant OHRC because of her diabetic condition.

12. At all times relevant to her claims and allegations herein, Plaintiff was a qualified individual with a disability, in that Plaintiff was formerly diagnosed with Post Traumatic Stress Disorder emanating from physical and emotional abuse by a former spouse, of which Defendant was aware.

13. In March of 2023, Dr. John Chancey was named the interim Executive Director of Defendant OHRC; in June 2023, he was made the permanent Executive Director.

14. In July 2023, Richard Herren was named General Counsel for Defendant OHRC.

15. Over the time period that Chancey and Herren were simultaneously employed by Defendant, they were close confidants and oversaw a workplace marred by discrimination, harassment, and intimidation of female employees of OHRC

16. Beginning September 2016, Plaintiff held the position of Director of Operations for Defendant OHRC.

17. As such, Plaintiff's job duties included, among other things, the reception of complaints by employees regarding unlawful workplace discrimination and harassment and forwarding those complaints to personnel employed by the State of Oklahoma for purposes of investigating and remediating said complaints.

18. Among the complaints Plaintiff received and reported were those provided by Wendy Underwood concerning the sexual harassment Underwood encountered at the

hands of Richard Herren, who was hired by Executive Director John Chancey as the OHRC General Counsel on or about July 2023. [1]

19. Wendy Underwood reported that Herren had repeatedly subjected her to unwanted and offensive physical contact without Underwood's consent, which included hugs and kisses on her cheek.

20. Herren would also communicate to Underwood a need to speak "privately," i.e., isolate Underwood from other OHRC employees attending meetings.

21. During these "private" meetings, in addition to subjecting Underwood to unsolicited physical contact, Herren would tell Underwood how attractive he found her and then admit to Underwood that he knew these comments were improper.

22. Another incident that Plaintiff reported involved the Director of Law Enforcement, Brady Robison, as well as Richard Herren.

23. At a meeting attended by a number of OHRC employees, Robison removed his shirt to display tattoos to a female employee.

24. Robison then offered to drop his pants so that he could display another tattoo.

25. A female in the room remarked that Robison conduct constituted "an HR event," i.e., unlawful conduct under Title VII.

26. In response, Robison used a profanity to emphatically explain that he did not care.

---

[1] Wendy Underwood is contemporaneously filing a parallel case in the Northern District of Oklahoma alleging similar claims.

27. Further, Robison boldly proclaimed that his lawyer was present – referring to Richard Herren – and stated, "You didn't hear anything, did you, Richard?"

28. Robison also described the female to whom he was presenting his tattoos as possessing "resting bitch face," a comment designed to denigrate a female based on her sex.

29. Another event involved a gay male who was employed as the Budget and Finance Director.

30. The employee sent an email that described a meeting in which the gay male employee, John Chancey, and Richard Herren were in attendance and Chancey and Herren discussed a scheme designed to prompt Plaintiff to resign.

31. In response, Herren burst into the gay male employee's office and threatened the employee with an adverse job action, specifically because the employee's email accurately described what was discussed at the meeting.

32. In response, Chancey declared, "I am never hiring another gay man – he's too emotional."

33. Subsequent to this event, Plaintiff met with John Chancey in Chancey's office to discuss personnel and procedural matters.

34. In the course of the conversation, Chancey became irrationally angry.

35. Chancey began to escalate his voice in speaking at Plaintiff.

36. Chancey then crushed his own glasses in his hand, threw them into a waste basket, and created a scene in front of other staff members assembled, an act designed to intimidate and create fear in Plaintiff; due to Plaintiff's PTSD emanating from long-term

emotional and physical abuse from a male, as set forth above, Chancey's conduct achieved its desired objective.

37. In the summer of 2024, an internal investigation of the OHRC workplace was undertaken.

38. This inquiry was led by a specially appointed investigator taken from the Oklahoma Department of Environmental Quality ("DEQ"), Gary Henry.

39. This investigation was initiated with the participation of Nikki Batt, who was employed by the State of Oklahoma as an Assistant Attorney General.

40. Plaintiff, along with Wendy Underwood, cooperated with this investigation and presented complaints of unlawful harassment and discrimination, including regarding matters set forth above, to the investigator.

41. However, subsequent to the completion of the investigation, no actions were taken and the harassment of Plaintiff and Underwood did not cease.

42. On November 21, 2024, a Special Meeting of the OHRC was held specifically to discuss the conduct of Executive Director John Chancey and whether Chancey should remain in that position.

43. After it was determined that Chancey's status would remain unchanged, Chancey and Herren openly celebrated the outcome.

44. Subsequently, OHRC, by and through John Chancey, began stripping discrete job functions from Plaintiff; this continued subsequent to Plaintiff filing her initial Charge of Discrimination.

45. On or about November 27, 2024, Plaintiff's State "P-Card" administrative oversight was revoked by Chancey.

46. On or about December 5, 2024, Chancey removed Plaintiff from "OK Bred" email chains; Plaintiff supervised this program.

47. On or about December 11, 2024, Chancey, in a fit of rage, angrily and aggressively closed distance on Plaintiff and waved documents in Plaintiff's face, making unconsented, unwanted, and physically intimidating contact with Plaintiff.

48. On or about December 18, 2024, in a conversation held just outside Plaintiff's office between Amanda English and Martha del Rio, a statement was made articulating a perceived need to "file something" with the intended effect of protecting "Dr. (John) Chancey" from Plaintiff's "vicious attacks," i.e., Plaintiff engaging in protected activity.

49. Due to the foregoing, on December 20, 2024, with the assistance of counsel, Plaintiff filed a Charge of Discrimination ("COD") with the Oklahoma City Area Office of the Equal Employment Opportunity Commission ("EEOC"), under COD No. 564-2025-00765, which delineated Plaintiff's complaints concerning the foregoing. [2]

50. Subsequent to the filing of the COD denominated above, which is protected activity, Defendant OHRC, by and through John Chancey and later through Michael Copeland, who succeeded Richard Herren as General Counsel and who has acted as Defendant's primary administrator subsequent to the enforced departure of John Chancey

---

[2] Wendy Underwood filed a companion COD, No. 564-2025-00765, on December 24, 2024.

in August 2025, took a series of actions that were adverse in nature and were directed at Plaintiff in retaliation for Plaintiff deigning to exercise her rights under the law to complain in good faith about unlawful conduct in her workplace.

51. Early on – but after the COD was filed and served on Defendant OHRC – Herren and Tracy Neel (an Assistant Attorney General for the State of Oklahoma), discussed means for pushing Plaintiff and Wendy Underwood out of their employment with OHRC; it was determined that most defensible way to achieve the extrication of Plaintiff and Gore would be to utilize "progressive discipline."

52. In response, Herren concurred, stating: "That's what we will be using."

53. This plan was discussed during a time period in which the December 2024 CODs filed by Plaintiff and Wendy Underwood were pending before EEOC and neither Plaintiff nor Underwood had done anything but engage in protected activities.

54. On or about December 23, 2024, Plaintiff's role as Designated Security Representative for Defendant OHRC was revoked.

55. On or about January 7, 2025, Plaintiff's task of making OHRC travel arrangements was removed from Plaintiff by John Chancey.

56. On or about January 8, 2025, in a meeting of OHRC personnel, John Chancey openly spoke of Plaintiff's filed COD and stood by silently as another OHRC employee, Martha del Rio, described Plaintiff as "an enemy of the agency (OHRC)."

57. On or about January 13, 2025, Plaintiff was removed from access to OHRC Simulcast emails by John Chancey.

58. On or about January 24, 2025, Plaintiff's Timekeeper access, a role associated with her Human Resources responsibilities, was revoked by John Chancey.

59. On or about January 24, 2025, John Chancey revoked Plaintiff's Risk Management reporting responsibility.

60. On or about January 28, 2025, John Chancey revoked Plaintiff's role as "Binkley" administrator.

61. On or about February 20, 2025, another Human Resources role, Plaintiff's access to Peoplesoft Financials, was revoked by John Chancey.

62. On or about February 28, 2025, John Chancey removed Plaintiff from her role as OHRC's Certified Purchasing Officer.

63. In April 2025, a mediation was held by EEOC to attempt to resolve the issues between Plaintiff and Defendant; the mediation did not result in a resolution.

64. In April 2025, Richard Herren resigned his position as the General Counsel with the OHRC.

65. Herren was replaced by Michael Copeland, who quickly demonstrated his support for John Chancey, including supporting and continuing Chancey's harassment and retaliation directed at Plaintiff, even after Chancey resigned under pressure in August 2025.

66. On or about May 19, 2025, John Chancey revoked all of Plaintiff's Human Resources and Payroll roles in Workday.

67. Further, on that same date, Chancey revoked Plaintiff's Treasury access.

68. On or about May 23, 2025, upon her return to her office after a medical absence, Plaintiff found that her locked file cabinet had been breached (locks broken) and that files were removed.

69. On or about May 23, 2025, John Chancey and Amanda English conducted interviews for the General Counsel position vacated by Richard Herren; this pertained to subject matter over which Plaintiff, as Director of Operations, would have input or authority.

70. On or about May 29, 2025, John Chancey revoked all of Plaintiff's security roles.

71. On or about May 30, 2025, Plaintiff had a conversation with an employee with the Oklahoma Department of Agriculture.

72. Said employee relayed to Plaintiff a conversation he recently had with John Chancey, a conversation in which the stripping of Plaintiff's job duties was a topic.

73. The Ag employee stated that he asked Chancey why Chancey did not simply fire Plaintiff instead of revoking her job functions and leaving her at home with nothing to do.

74. Chancey' responded: "I can't – I have her working at home because she threatened me and is suing me."

75. Beginning on or about June 2025, Michael Copeland, the newly minted General Counsel, began aggressively asserting authority as John Chancey's de facto first deputy.

76. Copeland, Chancey, and Amanda English had meetings from which Plaintiff was purposely excluded; these meetings covered subject matter over which Plaintiff, as Director of Operations, would have input or authority.

77. Copeland began challenging Plaintiff's job performance while discounting that the issues he was addressing redounded to job functions Chancey had taken from Plaintiff.

78. In a meeting held on or about June 17, 2025, Copeland made inappropriate comments about Plaintiff's then pending COD; Copeland asked Plaintiff direct questions regarding that matter, which was then pending before EEOC Enforcement /Investigation.

79. Copeland concluded that exchange by commenting that he did not wish to be sued by Plaintiff.

80. On or about June 18, 2025, Plaintiff received an after-hours email from a female Stewards Clerk; Plaintiff was included in the email as the Human Resources staff for OHRC, in addition to the Commission Chair, Vice Chair and Secretary, who was the Chair of Personnel Committee, Clint Brookover.

81. The email from the Stewards Clerk provided a detailed resignation to the commissioners that addressed the ongoing abuse and harassment she had received for taking part in the protected "EEOC Type investigation" (i.e., the Gary Henry investigation) and ongoing issues she had reported prior as part of that investigation and how they increased in nature subsequent thereto.

82. The Stewards Clerk additionally communicated – subsequent to her separation – that ***she was still being contacted and harangued and demanded that Michael Copeland cease from making contact with her in any form***.

83. On or about June 25, 2025, Michael Copeland – the General Counsel, not the Executive Director – issued a written reprimand to Plaintiff for an act that was specifically approved prior to Copeland's arrival, i.e., communicating directly with Commission members (a procedure implemented in November 2024); in imposing this disciplinary action, Copeland skipped right past the first step in OHRC's progressive discipline procedure, i.e., a verbal reprimand.

84. On or about July 1, 2025, Plaintiff's application for FMLA covering the time period from June 27 through August 8, 2025, was approved.

85. Nothwithstanding, the approval contained some very unusual and disturbing verbiage:

> "*While on leave you will be required to furnish weekly reports of your status and intent to return to work to Dr Chancey and Michael Copeland. If the circumstances of your leave change and you are able to return earlier than expected, you will be required to notify us at lease two working days prior to the date you intend to report for work.*"

86. This prompted Plaintiff to communicate with OMES and the Office of Disability Concerns, who advised Plaintiff that she was not obligated to make these weekly reports unless her date of return changed.

87. Accordingly, John Chancey and Michael Copeland attempted to add conditions to Plaintiff's statutorily protected right to utilize the FMLA as part of their

continuing retaliation and harassment subsequent to Plaintiff filing a COD in December 2024 (which was still pending before EEOC at this time).

88. On or about July 5, 2025, Plaintiff's access to all state resources was revoked at the direction of John Chancey; this action precluded Plaintiff from accessing her personal accounts regarding payroll and leave.

89. On or about August 5, 2025, Plaintiff submitted a request that her FMLA be extended to September 17, 2025, per her medical provider's diagnosis of Plaintiff's need for further diagnostic testing and scheduling surgical procedures; due to the revocation of Plaintiff's state resources access (as set forth above), communicating about this matter was more cumbersome.

90. On or about August 21, 2025, at a hearing of the OHRC, John Chancey resigned, ending his tumultuous tenure as Executive Director of the OHRC.

91. The setting described immediately above was chronicled by the site, NonDoc. *See* Tres Savage and Kevin Eagleson, "'So many problems': After reporting to FBI, John Chancey resigns as Horse Racing Commission director," https://nondoc.com/2025/08/25/after-reporting-to-fbi-john-chancey-resigns-as-oklahoma-horse-racing-commission-director/.

92. According to that article, Michael Copeland represented that he, OHRC General Counsel, was ***John Chancey's attorney***. *Id.*

93. Shortly after Chancey departed from the OHRC, Amanda English, who had been brought into the OHRC by Chancey, was named Interim Director; Copeland began thereafter taking on an even more active and supervisory role in the agency.

94. On or about September 15, 2025, Plaintiff sent an email to Vonceil Plump at OMES and Michael Copeland to request an Accommodation under the ADA, as Plaintiff's medical /disability issues would require some additional time off beyond the allotted 12 weeks under the FMLA.

95. Plaintiff's attached formal, written request outlined the following:

a. A detailed the chain of events regarding Plaintiff's disability as they had occurred since May 2025;

b. A description of the care plan (also provided on FMLA paperwork) and need for health insurance approval regarding the surgery Plaintiff was scheduled for that day;

c. A description of Plaintiff's need for recovery and physical therapy, as described to Plaintiff by her orthopedic doctor;

d. Plaintiff's clearly delineated request to use her available accrued leave only;

e. An estimated end date of November 10, 2025, meaning it was anticipated that Plaintiff could return to work after that date;

f. A statement outlining Plaintiff's 25 years of employment with the State of Oklahoma, which included nine years with Defendant OHRC;

g. A statement articulating how historically Defendant OHRC had allowed employees extensions to FMLA as needed.

96. Notwithstanding the foregoing, Plaintiff's request for a reasonable accommodation of a short, clearly defined leave of absence to address a serious medical need was denied.

97. At the time Defendant OHRC denied Plaintiff's accommodation request, Plaintiff had enough paid leave time accumulated and banked, due to her time in service with the State of Oklahoma, to cover her absence from work through January 2026, meaning that Plaintiff's request for leave under the ADA was not for unpaid leave; it was simply time off work, similar to vacation.

98. Further, Plaintiff additionally had sufficient commitments from fellow employees of contributed leave time to allow for Plaintiff to be absent – with pay – for 1,000 hours, or nearly six months.

99. Notwithstanding, due to Plaintiff's inability to immediately return to work subsequent to her surgery, coupled with Defendant's intentional and purposeful denial of Plaintiff's requested accommodation, Defendant OHRC ended Plaintiff's employment on or about October 20, 2025.

100. As another means of imposing punishment upon Plaintiff in response to her engaging in protected activity, during the week of October 10, 2025, ***while Plaintiff was still an employee of Defendant OHRC***, Defendant intentionally changed Plaintiff's status to "Leave Without Pay" ("LWOP"), which took Plaintiff out of her health insurance coverage just as she was scheduled for surgery connected to her diabetes, thereby ensuring that the non-elective surgery was, at a minimum, delayed.

101. On or about January 2026, a meeting was held among several OHRC personnel, including Michael Copeland and (then) Interim Executive Director, Amanda English.

102. At that meeting, Copeland stated that Defendant OHRC would be re-employing Richard Herren, the very person who sexually harassed Wendy Underwood and about whom Plaintiff complained in her December 20, 2024, COD, as well as to Gary Henry during the internal investigation described above.

103. Copeland stated that Herren "did nothing wrong," and added, "Shonna and Wendy [Underwood] ran him off."

104. Others in the room, including English, laughed with Copeland at this assertion; none voiced any objection to Copeland's statements but rather demonstrated their agreement therewith.

105. The foregoing demonstrates that Defendant OHRC, by and through its administrative agents, purposely and intentionally retaliated against Plaintiff in response to her participating in activity protected under Title VII of the Civil Rights Act of 1964, including supporting the claims of unlawful harassment by other OHRC employees, including, but not limited to, those lodged by Wendy Underwood.

106. Because the discrete acts of retaliation on the part of OHRC, by and through John Chancey and Michael Copeland had not been administratively exhausted, Plaintiff chronicled Defendant OHRC's conduct subsequent to Plaintiff's December 24, 2024, COD in a subsequent COD, No. 564-2026-01072, which was filed on January 28, 2026.

107. EEOC issued its "Dismissal and Notice of Rights," or "Right to Sue" letter, on August 28, 2026.

108. Accordingly, Plaintiff's filings have been and are timely.

**CAUSE OF ACTION NO. 1:**
**UNLAWFUL DISCRIMINATION /RETALIATION**
**Title VII, Civil Rights Act of 1964**
**42 U.S.C. § 2000e-3(a)**

109. Plaintiff Shonna Gore incorporates paragraphs 1 through 108 herein as if fully set forth verbatim.

110. At all times relevant to the claims alleged herein, Plaintiff was a member of a statutorily protected class, female.

111. At all times relevant to the claims alleged herein, Plaintiff was an employee of Defendant OHRC.

112. At all times relevant to the claims alleged herein, Defendant OHRC was an employer covered by Title VII of the Civil Rights Act of 1964.

113. While employed by Defendant OHRC, Plaintiff encountered unlawful harassment in her workplace on the basis of her sex.

114. While employed by Defendant OHRC, Plaintiff was made aware that other employees had been subjected to unlawful harassment in Plaintiff's workplace on the basis of protected class status, including sex.

115. Plaintiff engaged in protected activity by reporting the harassment delineated above during the course of an internal investigation of the OHRC workplace in the summer of 2024.

116. Plaintiff engaged in protected activity by filing a Charge of Discrimination with the Oklahoma City Area Office in December 2024 pertaining to the harassment she encountered.

117. In response to engaging in protected activity, Plaintiff was subjected to a number of adverse employment actions, including the retraction and denial of tangible benefits; intentional interruptions of necessary technical or electronic tools for engaging in the essential functions of her position; the stripping away of job functions; the intentional and unreasonable denial of a necessary and reasonable accommodation emanating from her disability; and the involuntary separation from her employment.

118. As a direct and proximate cause of Defendant OHRC's actions, Plaintiff's rights under Title VII of the Civil Rights Act of 1964 were violated, causing Plaintiff injury.

119. Accordingly, Plaintiff Shonna Gore is entitled to damages and other relief as set forth herein.

**CAUSE OF ACTION NO. 2:**
**UNLAWFUL DISCRIMINATION /HOSTILE WORK ENVIRONMENT**
**Title VII, Civil Rights Act of 1964**
**42 U.S.C. § 2000e-2(a)(1)**

120. Plaintiff Shonna Gore incorporates paragraphs 1 through 108 herein as if fully set forth verbatim.

121. At all times relevant to the claims alleged herein, Plaintiff was a member of a statutorily protected class, female.

122. At all times relevant to the claims alleged herein, Plaintiff was an employee of Defendant OHRC.

123. While employed by Defendant OHRC, Plaintiff encountered unlawful harassment in her workplace on the basis of her sex.

124. While employed by Defendant OHRC, Plaintiff was made aware that other employees had been subjected to unlawful harassment in Plaintiff's workplace on the basis of protected class status, including sex.

125. The conduct to which Plaintiff (and other females) was subjected was pervasive and perpetrated (in particular) by Executive Director John Chancey and General Counsel Richard Herren.

126. The unlawful conduct experience by Plaintiff altered the terms and conditions of Plaintiff's employment and created an abusive working environment.

127. As a direct and proximate cause of Defendant OHRC's actions, Plaintiff's rights under Title VII of the Civil Rights Act of 1964 were violated, causing Plaintiff injury.

128. Accordingly, Plaintiff Shonna Gore is entitled to damages and other relief as set forth herein.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Shonna Gore prays this Court will grant her the following relief:

A. Judgment against Defendant OHRC in excess of Seventy-Five Thousand Dollars ($75,000.00);

B. Order Defendant OHRC to pay Plaintiff compensatory and other damages where permitted by law;

C. Order Defendant OHRC to pay the attorney fees, costs, and accruing interest incurred by Plaintiff in prosecuting this matter;

D. Any other further relief this Court deems just and proper.

Respectfully submitted,

**SOLOMON | ARIEH**

s/ David R. Keesling
David R. Keesling, OBA No. 17881
Timothy S. Kittle, OBA No. 21979
401 South Boston Avenue, Suite 2300
Tulsa, Oklahoma 74103
(918) 631-7770 – Telephone
dkeesling@solomon-arieh.com
tkittle@solomon-arieh.com
***Attorneys for Plaintiff:***
***Shonna Gore***